United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMIN GHANADAN,<br>Plaintiff,<br>v.<br>UNIVERSAL INTERMODAL SERVICES, LLC, et al.,<br>Defendants. | Case No. 26-cv-04567-AMO<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>Re: Dkt. No. 18 |

Before the Court is Plaintiff Ramin Ghanadan's motion to remand this putative wage and hour class action to state court. Because the matter is fully briefed and suitable for decision without oral argument, pursuant to Civil Local Rule 7-1(b), the hearing set for August 20, 2026, is **VACATED**. Having read the parties' papers, carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court **GRANTS** the motion to remand for the reasons set forth below.

## I. BACKGROUND

### A. Factual Background

Universal Intermodal Services, Inc. and UniversCal LLC (collectively, "Universal") employed Ghanadan as an "hourly-paid, nonexempt employee" from approximately October 2024 to September 2025. Complaint ("Compl."), Dkt. No. 1-1 ¶ 19. Ghanadan alleges that Universal "engaged in a pattern and practice of wage abuse" against its employees by "failing to pay them for all regular and/or overtime wages earned and for missed meal periods and rest breaks[.]" Compl. ¶ 26. Ghanadan asserts ten causes of action for: (1) unpaid overtime (Cal. Lab. Code §§ 510, 1198); (2) unpaid meal period premiums (Cal. Lab. Code §§ 226.7, 512(a)); (3) unpaid rest period premiums (Cal. Lab. Code § 226.7); (4) unpaid minimum wages (Cal. Lab. Code

§§ 1194, 1197, and 1197.1); (5) failure to timely pay final wages at termination (Cal. Lab. Code §§ 201, 202); (6) failure to timely pay wages during employment (Cal. Lab. Code § 204); (7) non-compliant wage statements (Cal. Lab. Code § 226(a)); (8) failure to keep payroll records (Cal. Lab. Code § 1174(d)); (9) unreimbursed business expenses (Cal. Lab. Code §§ 2800, 2802); and (10) violations of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.). Compl. ¶¶ 50-120.

Ghanadan seeks to represent a proposed class, consisting of: "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." *Id.* ¶ 14. Ghanadan also seeks to represent a proposed subclass, consisting of: "[a]ll class members who received overtime compensation at a rate lower than their respective regular rate of pay because Defendants failed to include all shift differential pay/commissions/non-discretionary bonuses/non-discretionary performance pay in the calculation of the regular rate of pay for overtime pay purposes." *Id.*

### B. Procedural Background

On March 9, 2026, Ghanadan filed a complaint in Alameda County Superior Court. Compl. On April 14, 2026, Ghanadan served the complaint on Universal. Dkt. No. 1-2. On May 14, 2026, Universal removed the case to this Court, asserting jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Dkt. No. 1 ¶ 4. On June 12, 2026, Ghanadan moved to remand the case. Dkt. No. 18. Universal opposed the motion on June 26, 2026, (Dkt. No. 20), and the reply followed on July 6, 2026. Dkt. No. 21.

## II. LEGAL STANDARD

### A. Removal Jurisdiction

A defendant may remove a class action from state to federal court by filing a notice of removal that lays out the grounds for removal. Title 28 U.S.C. § 1453(b); Title 28 U.S.C. § 1446(a). "A plaintiff who contests the existence of removal jurisdiction may file a motion to remand, *see* 28 U.S.C. § 1447(c), the functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)." *Leite v. Crane Co.*, 749 F.3d 1117, 1122

(9th Cir. 2014).

Like a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), a plaintiff's motion to remand may raise either a facial attack or a factual attack on the defendant's jurisdictional allegations. *Leite*, 749 F.3d at 1121. In effect, a facial attack challenges "the form, not the substance" of the defendant's removal allegations, and the defendant need not respond to the remand motion with "competent proof" under a summary judgment-type standard. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 700 (9th Cir. 2020). By contrast, an attack is factual when the plaintiff "contests the truth of the [defendant's] factual allegations, usually by introducing evidence outside the pleadings." *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020). In response to a factual attack, the defendant bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds the threshold amount. To determine if a defendant has met its burden, a court may consider "evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence." *Ibarra*, 775 F.3d at 1197 (internal quotations omitted). *Harris*, 980 F.3d at 699. A plaintiff need not introduce evidence and may rely solely on "a reasoned argument as to why any assumptions on which [defendant's numbers] are based are not supported by evidence." *Harris*, 980 F.3d at 700.

### B. CAFA Jurisdiction

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (citing Title 28 U.S.C. § 1332(d)). Importantly, there is no presumption against removal under CAFA. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see also Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) ("The Court has explained that 'CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.' ") (quoting *Dart Cherokee*, 574 U.S. at 89). However, the removing party has the burden of establishing federal jurisdiction. *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025). Because the removing defendant has

the burden of proof, "[i]f the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Ibarra*, 775 F.3d at 1199.

## III. DISCUSSION

The Court first engages Ghanadan's challenges to Universal's proffered evidence before turning to whether Universal has met CAFA's amount in controversy requirement.

### A. Evidentiary Challenges

"A defendant may rely on reasonable assumptions" though they "need not make the plaintiff's case for it or prove the amount in controversy beyond a legal certainty." *Harris*, 980 F.3d at 701. "[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden . . . the chain of reasoning and its underlying assumptions must be reasonable." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015). The Ninth Circuit has consistently approved the use of affidavits and declarations to establish or contest the amount in controversy for purposes of CAFA removal. *See, e.g.*, *Ibarra*, 775 F.3d at 1197; *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010).

To support its amount in controversy estimates, Universal relies on a declaration from Tim Monahan, Vice President, Legal, for Universal Logistics Holdings, Inc.[1] *See* Monahan Declaration, Dkt. No. 1-4 ("Monahan Decl."); Dkt. No. 20 at 2. The declaration is based on Monahan's personal knowledge and his review of Universal's business records, including "personnel records, personnel policies, time records/data, and wage records/data[.]" Monahan Decl. ¶ 2. Monahan declares that from March 9, 2022, through the filing of the Notice, Universal employed at least 429 proposed class members, and they "collectively worked at least 20,310 workweeks." *Id.* ¶ 4. Monahan states the average hourly rate for the proposed class members is approximately $27.12 – they are generally hired on a full-time basis, typically expected to work at least eight hours a day, five days a week, and are paid weekly. *Id.* ¶ 5. Further, Monahan states that during March 9, 2023, and April 14, 2026, at least 317 proposed class members separated

[1] Universal Logistics Holdings, Inc. is the parent company of both Defendants in this action, and not itself a Defendant as incorrectly noted in the Monahan Decl. Monahan Decl. ¶ 1; Dkt. No. 20 at 2.

United States District Court
Northern District of California

from Universal's employ. *Id.* ¶ 7. Lastly, from March 9, 2025, through the filing of the Notice, Universal employed approximately 173 proposed class members and "issued at least 5,193 wage statements[.]" *Id.* ¶ 6.

Ghanadan challenges Monahan's declaration as vague, contradictory, and unsupported by any "business record, or any methodology." Dkt. No. 18 at 6, 17. Specifically, Ghanadan asserts that the $27.12 average hourly rate in Monahan's Declaration contradicts the $26.85 average hourly rate used to calculate estimates for waiting time penalties, overtime, and meal and rest breaks in Universal's Notice of Removal.[2] Monahan Decl. ¶ 5; Dkt. No. 1 ¶¶ 29, 33, 42, 47. Ghanadan also challenges Monahan's use of generalizations, e.g., that employees were "generally hired on a full-time basis[,]" "typically expected to work shifts that are at least eight hours in length, five days a week[,]" that Universal issued "at least 5,193 wage statements[,]" and that the proposed class members "collectively worked at least 20,310 workweeks," as deficient because they are unreliable. Dkt. No. 18 at 10, 11, 14, 18; Monahan Decl. ¶¶ 4-7. Ghanadan further challenges the number of proposed class members – 173 – that Monahan uses to calculate the number of wage statements issued during the applicable period. Dkt. No. 1 ¶ 30; Monahan Decl. ¶ 6. That number contradicts Universal's Notice of Removal which states, "at least 124" employees fall under the applicable one-year period for wage statement penalties, and the number – 166 – that Universal uses to calculate the estimated amount in controversy for this claim. Finally, Ghanadan argues Universal's assertion that "$16.23 represents the average California minimum wage from 2022 to 2026," without further detail, is not summary-judgment type evidence. Dkt. No. 18 at 15.

As discussed more fully below, Universal's chain of reasoning and assumptions must be reasonable, and the discrepancies and unexplained figures in its submissions fail this standard. *See Frias-Estrada v. Trek Retail Corp.*, 534 F. Supp. 3d 1058, 1067 (N.D. Cal. 2021) ("[p]laintiff has identified so many flaws and unexplained assumptions in [the] declaration that [defendant's]

---

[2] Universal contends that this was merely a "typographical error." Dkt. No. 20 at 3, 10. To date, however, Universal has not taken steps to correct its error, either by filing an errata or another appropriate corrected filing.

'chain of reasoning and its underlying assumptions' cannot be considered reasonable."); *Lopez v. Advanced Drainage Sys., Inc.*, 777 F. Supp. 3d 1100, 1107 (N.D. Cal. 2025) ("While [defendant] may make reasonable assumptions about violation rates based on the language of the complaint, it may not rely on unexplained conjecture in lieu of providing an evidentiary basis almost certainly in its possession.). With this in mind, the Court discusses Ghanadan's specific challenges in the context of Universal's calculations for each category of violations on which it relies to meet CAFA's amount in controversy requirement.

**B. Amount in Controversy**

A "defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Ibarra*, 775 F.3d at 1197. Universal proffers a total amount in controversy of $9,592,298.[3] Dkt. No. 1 ¶¶ 23-52. The Court evaluates each component of that calculation below.

**1. Wage Statement Penalties**

"Under California Labor Code § 226(e), an employer owes a penalty of $50 per initial pay period and $100 for each subsequent pay period when it fails to provide complete and accurate wage statements to employees, with an aggregate cap of $4,000 per employee." *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019). Here, Universal estimates the amount in controversy for wage statement penalties as follows:

- **(166 initial wage statements x $50 = $8,300) + (5,027 subsequent wage statement x $100 = $502,700) = $393,550[4]**

Dkt. No. 1 ¶ 30. Ghanadan takes issue with this estimate for two reasons: (1) the 166-figure used for this calculation does not match the number of employees cited in the Notice ("at least 124") nor the number of employees cited in the Monahan Declaration (173); and 2) Universal relies on

[3] Universal's purported amount in controversy does not include Ghanadan's claims for untimely wages during employment, failure to keep requisite payroll records, unreimbursed business expenses, or unfair competition. Dkt. No. 1 ¶ 53.

[4] Universal accounted for the maximum $4,000 penalty per employee set forth in Cal. Lab. Code Section 226(e)(1). Dkt. No. 1 at 9 n.2



United States District Court
Northern District of California

an insufficient allegation in the complaint to claim a 100 percent violation rate. The Court considers these in turn.

First, the Court understands that the 166 initial wage statements plus the 5,027 subsequent wage statements equals the total number of issued wage statements (5,193) during the one-year statutory period as stated in the Monahan Declaration. Monahan Decl. ¶ 6. The issue is, Universal arbitrarily claims that 166 proposed class members are owed penalties for initial wage statements, which conflicts with the figures provided – 124 in the Notice and 173 in the Monahan Declaration. Monahan Decl. ¶ 6; Dkt. No. 1 ¶ 30. Additionally, Universal claims to have accounted for the $4,000 maximum per employee (Dkt. No. 1 at 9 n.2), but multiplying that maximum by any of the number of employees claimed – 124, 166, or 173 – does not equal the amount Universal proffers. In any event, the Court is not required "to perform a detailed mathematical calculation of the amount in controversy before determining whether the defendant has satisfied its burden." *Harris*, 980 F.3d at 701. Rather, the Court should "test[] by consideration of real evidence." *Id.* Universal fails to offer real evidence for the Court to consider and instead offers conflicting figures and incorrect calculations. This is unreasonable.

Second, Universal assumes a 100 percent violation rate, claiming it is reasonable because the complaint "contain[s] no information regarding the frequency of these alleged violations." Dkt. No. 1 ¶ 29. "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019). However, because Universal fails to provide real evidence or consistent figures for the number of employees that are owed wage statement penalties, the assumptions it draws from Ghanadan's complaint cannot be reasonably considered for its calculations, irrespective of its assumed violation rate.

Accordingly, the Court finds that the underlying evidentiary basis for Universal's estimated amount in controversy for wage statement penalties is inadequate and reduces the estimated amount to $0. *Jauregui*, 28 F.4th at 994 ("Of course, if a defendant provided *no* evidence or clearly inadequate evidence supporting its valuation for a claim, then it might be appropriate for a district court to assign that claim a $0 value.").

**2. Waiting Time Penalties**

"Under California Labor Code § 203, an employer must pay daily wages for up to 30 days if it fails to pay all wages due within 72 hours of termination or resignation." *Chavez*, 2019 WL 1501576, at *3. The penalty accrues daily until the wages are paid. *Id.* (citing Cal. Lab. Code § 203(a)). Universal estimates the below amount in controversy for waiting time penalties.

- **($26.85/hr x 8 hours per day x 30 days x 317 putative class members) = $2,042,748**

Dkt. No. 1 ¶ 29. Ghanadan challenges this estimated calculation on two grounds: 1) Universal's failure to provide any support for how the number of former employees was calculated nor any explanation for why a thirty-day waiting period applies to all proposed class members; and 2) the unreliability of Universal's hourly rate. Dkt. No. 18 at 12-13. The Court addresses these in turn.

First, Universal assumes the thirty-day waiting period applies to all 317 proposed class members, and that they all worked at least eight hours per day. Dkt. No. 1 ¶ 34. The Monahan Declaration claims class members "are ***generally*** hired on a full-time basis" and "***typically*** expected to work shifts that are at least eight hours in length." Monahan Decl. ¶ 5 (emphasis added). Monahan also declares that per the business records, "***at least*** 317 class members" separated from Universal's employ. *Id.* ¶ 7 (emphasis). Neither Monahan's Declaration nor Universal's brief appear to factor in this qualifying language into the numbers and calculations presented to the Court, though the actual numbers, are "easily and reliably determined from [defendants'] own records." *Lopez*, 777 F. Supp. 3d at 1108. Universal's proffered numbers are thus unreasonable.

Second, the conflicting hourly rates - $26.85 in the Notice and $27.12 in the Monahan Declaration – are similarly troublesome. It is unclear to the Court where the hourly rate came from. The hourly rate is also "easily and reliably determined" from Universal's records. *See Lopez*, 777 F. Supp. 3d at 1108. Universal also fails to "describe [the] process for determining the number of employees, . . . the [$26.85 or $27.12] average hourly rate[s] for the putative class, or number of hours worked per week." *Frias-Estrada*, 534 F. Supp. 3d at 1065.

Accordingly, Universal's estimated amount in controversy for waiting time penalties is unreasonable because Universal fails to factor in the qualifying language and hourly wage

discrepancy. The Court cannot reasonably accept a 100 percent violation rate for this estimate, but finds it reasonable to accept 80 percent of Universal's proposed calculation, reducing Universal's estimate for its exposure on this claim from $2,042,748 to $1,634,198.

**3. Overtime**

California Labor Code Section 510 requires employers to pay non-exempt employees one and a half times their regular rate of pay for any hours worked over eight in one day or 40 in one week. *Chavez*, 2019 WL 1501576, at *5. Universal estimates the below amount in controversy for unpaid overtime based on an assumption of two hours of unpaid overtime per class member, per week:

- **($26.85/hour x 1.5 x 20,310 workweeks x 2 hours of alleged unpaid overtime per workweek) = $1,635,970**

Dkt. No. 1 ¶ 33. Universal assumes two hours of unpaid overtime per proposed class member per workweek across 20,310 workweeks. Universal contends that these estimates are reasonable because the complaint "fails to provide any information about the frequency which Defendants allegedly failed to pay overtime . . . [and thus] Defendants may choose to estimate the frequency of violations[.]" Dkt. No. 1 ¶ 31 (citing *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. ED-CV-190839-DOC (SPx), 2019 WL 7987117, at *6 (C.D. Cal. June 21, 2019) (finding a defendant may reasonably choose to estimate the frequency of violations when the complaint provides little information about the frequency on the violations)).

"The Ninth Circuit [has] held that [allegations of] 'a pattern and practice' of doing something does not necessarily mean always doing something, and that under such circumstances, the defendant 'bears the burden to show that its estimated amount in controversy relied on reasonable assumptions.' " *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 911 (N.D. Cal. 2016) (quoting *Ibarra*, 775 F.3d at 1198-99). While it may be reasonable in certain circumstances to assume two hours of unpaid overtime per class member based on the allegations in the complaint, "[defendants'] assumptions here are unreasonable because they are . . . unjustified." *See Lopez,* 777 F. Supp. 3d at 1107. Universal fails to provide any reasonable explanation for how the number of workweeks were calculated. The Monahan Declaration also

fails to mention any facts regarding overtime estimates other than "class members are typically expected to work shifts that are at least eight hours in length[.]" Monahan Decl. ¶ 5. Like the defendant in *Lopez*, Universal "provides no basis whatsoever for its assumption that each class member worked . . . [two hours] of unpaid overtime" and without "any such justification, its assumption amounts to no more than speculation and conjecture, and is thus unreasonable." 777 F. Supp. 3d at 1107. It is particularly notable because, presumably, Universal "can readily determine from its own records the actual number of shifts lasting below or above 8 hours during the class period." *Id.* While Universal was entitled to make reasonable assumptions about overtime rates, *see Garza*, 178 F. Supp. 3d at 911, it may not rely on unexplained assumptions "in lieu of providing an evidentiary basis almost certainly in its possession," *Lopez* , 777 F. Supp. 3d at 1107 and its failure to do so here renders this assumed overtime calculation unreasonable.

The Court cannot accept Universal's unreasonable assumptions used here to calculate an amount in controversy for unpaid overtime wages. Doing so would ignore Universal's lack of evidentiary basis and unexplained assumptions. The Court finds it reasonable to reduce Universal's estimated amount merits a reduction, by 20 percent or $327,194, thereby reducing Universal's estimate for its exposure on this claim from $1,635,970 to $1,308,776.

**4. Minimum Wage**

Universal assumes one hour of unpaid minimum wage and estimates the amount in controversy as stated below:

- **($16.23 average minimum wage from 2022-2026 x 20,310 workweeks x 1 hour per workweek) = $329,631**

Dkt. No. 1 ¶ 37. Plaintiff challenges Universal's claimed minimum wage of $16.23 as "[a]n unexplained average, unsupported by any citation or data, [which] is not summary-judgment-type evidence." Dkt. No. 18 at 15.

In its notice of removal, Universal asserts the "average minimum wage from 2022-2026" is $16.23 (Dkt. No. 1 ¶ 37) yet fails to provide any support for how this number was calculated. That failure is problematic because the amount in controversy is "to be tested by consideration of real evidence . . . using reasonable assumptions underlying the defendant's theory of damages[.]"

United States District Court
Northern District of California

*Ibarra,* 775 F.3d at 1198. Because Universal's average minimum wage appears to have been pulled from thin air, the Court rejects this estimated amount in controversy. *See Jauregui*, 28 F.4th at 996 ("Where a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden."); *Ibarra*, 775 F.3d at 1199 ("[A]ssumptions cannot be pulled from thin air but need some reasonable ground underlying them."). Thus, the Court reduces Universal's minimum wage amount in controversy estimate to $0.

**5. Meal and Rest Period Premiums**

Cal. Lab. Code Section 226.7 requires that an employer pay an additional hour of pay anytime it fails to provide a meal or rest period. Universal applies a 60 percent violation rate, equating to three missed meal periods and three missed rest periods per workweek, (Dkt. No. 1 ¶¶ 38-47), and calculates the amount in controversy as follows:

- **Meal Breaks Claim: ($26.85/hour x 20,310 workweeks x 5 days per workweek x 0.6) = $1,635,970**
- **Rest Breaks Claim: ($26.85/hour x 20,310 workweeks x 5 days per workweek x 0.6) = $1,635,970**

*Id.* Ghanadan challenges Universal's use of a 60 percent violation rate as unsupported and unreasonable. Dkt. No. 18 at 16-17. The Court finds *Armstrong v. Ruan Transp. Corp.*, EDCV 16-1143-VAP (SPx), 2016 WL 6267931, at *2-3 (C.D. Cal. Oct. 25, 2016) persuasive. In *Armstrong*, the court found that defendant's assumption for "one meal and rest period violation per workweek" based only on a declaration – that did not address "the possible rate of meal – and rest-period violations, the number of complaints [d]efendant received regarding the lack of meal and rest periods, [d]efendant's policy addressing how meal and rest periods are schedule, or anything else to provide factual support[,]" failed to meet the burden for purposes of removal. *Id.* at *3.

Universal contends that "courts have approved violation rates from 50% to 100% on 'policy and practice' allegations—including the 60% rate applied here." Dkt. No. 20 at 8 (citing

*Villa v. C&W Facility Servs., Inc.*, No. 25-CV-10646-NW, 2026 WL 948726, at *7 (N.D. Cal. Apr. 8, 2026) (acknowledging at least a 50% violation rate for missed meal periods is reasonable)). However, given the deficiencies in the Monahan Declaration, the Court finds it more appropriate to apply a 20 percent assumed violation rate frequently upheld in this Circuit instead of the 60 percent violation rate Universal urges. *See Chavez*, 2019 WL 1501576, at *3 ("Courts in this Circuit, including in this District, have frequently upheld at least a 20% violation rate for purposes of CAFA amount in controversy calculations where the plaintiff does not specify the frequency of the alleged missed meal or rest periods."). Accordingly, the Court reduces Universal's meal and rest period calculations as follows:

- <u>Meal Breaks Claim</u>: ($26.85/hour x 20,310 workweeks x 5 days per workweek x 0.2) = $545,323
- <u>Rest Breaks Claim</u>: ($26.85/hour x 20,310 workweeks x 5 days per workweek x 0.2) = $545,323

**6. Attorney's Fees**

Finally, Ghanadan argues that Universal fails to support its estimate regarding the attorney's fees at stake in this case. Dkt. No. 18 at 19. As with other aspects of the amount in controversy, Universal bears the burden of supporting the estimate of attorney's fees "by a preponderance of the evidence" based on "summary-judgment-type evidence." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018). There is no doubt that attorney's fees are at stake in this case. *See* Compl. ¶ 56. However, Universal's attorney's fee estimate of $1,918,459 (or 25 percent of its estimated $7,673,839) was calculated by relying on inflated estimates of the sum in controversy for the wage and hour claims. Thus, the attorney's fees estimate should also be discounted. *See Frias-Estrada*, 534 F. Supp. 3d at 1067 (remanding case for lack of jurisdiction where it was "clear that the recoverable attorneys' fees [we]re meaningfully less than the projected $1,153,459.90 considering all the downward adjustments" applied by the Court).

Additionally, the Ninth Circuit has declined to adopt a per se rule that the amount of attorney fees in controversy in class actions must be calculated as 25 percent of all other alleged

recovery. *Fritsch*, 899 F.3d at 795. Rather, the Ninth Circuit is "confident that district courts are well equipped to determine whether defendants have carried their burden of proving future attorneys' fees" and has authorized district courts to "rely on their own knowledge of customary rates and their experience concerning reasonable and proper fees." *Fritsch*, 899 F.3d at 795. Accordingly, the Court finds a reasonable estimate of anticipated attorney fees in this matter to be $500,000.[5] When combined with the reduced estimates for wage statement penalties, waiting time penalties, overtime, minimum wage, and meal and rest periods, the total estimated amount in controversy is $4,533,620. This falls short of CAFA's amount in controversy requirement. Therefore, Universal has not met its burden to establish CAFA jurisdiction by a preponderance of the evidence.

**CONCLUSION**

For the reasons set forth above, Ghanadan's motion to remand is **GRANTED**. This action is hereby remanded to Alameda County Superior Court. The Clerk shall close the file in this matter.

**IT IS SO ORDERED.**

Dated: July 30, 2026

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**

[5] The Court notes that this figure is in line with the majority of fee awards in the settlements Universal references in its opposition brief. *See* Opp. at 12 (collecting cases awarding fees between $280,000 to $367,500, with one outlier award of $1,031,250 based on 27.5% of the common fund).